Good morning everyone. We've got the one case on calendar, a comeback case. So let's get started and it's Sturgeon v. Sue Masica. Good morning. Thank you. I'm Matt Finley. May it please the court, I'm Matt Finley for Appellant John Sturgeon. My best laid plans this morning are to relieve five minutes for a rebuttal. We'll see how that plays itself out. All right. Before you get started, let me just clarify that you're splitting time with the state of Alaska, is that right? So you're going to take 15 minutes, the state will take 10, and of the 15 you'd like to reserve five. We'll see how that works, but that's the plan. If you can try to keep an eye on the clock and I'll try to remind you as well. I will. Thank you very much, Your Honor. The text of ANILCA answers the three questions here on remand. It provides that the Nation River is not public land as defined in the statute. It provides that the Park Service may not regulate navigable waters in Alaska as though they were part of a park unit. And it provides that the Park Service may not regulate non-federal land in Alaska under the guise of protecting federal park land. Now, ANILCA's structure, purpose, and history help explain why this is. As the Supreme Court recognized in this case, ANILCA really had two stated goals. The first was to provide sufficient protection for environmental values, and the second to, quote, provide adequate opportunity for satisfaction of the economic and social needs of the state of Alaska and its people. The fundamental premise of Mr. Churchill's claim has always been that ANILCA, in adding over 100 million acres of lands into national parks and preserves in Alaska, went to great lengths to ensure that non-federal lands and waters within these new parks would not be part of the parks and would not be subject to regulation as though they were. This was a real concern because the Supreme Court also recognized— You know, you want us to hear you. Your voice drops. I don't know why. But I hear you, and then I don't hear you. It doesn't. I will lean closer to the microphone. Does that help? That is much better. Oh, there we go. Let me start you with what you had mentioned about one of the goals of ANILCA, which is preservation of the environment. How can that be accomplished if NPS has no authority to regulate the navigable waters at all? It can be accomplished because the Park Service has authority over federal waters. It has authority over navigable waters that were pre-statehood withdrawals. It has authority over any navigable waters where the submerged lands were conveyed to the Park Service. Keep in mind, the Yukon-Charlie is a good example. There are tens of thousands of acres in this preserve alone, all kinds of streams, tributaries, many of those being federal. The river running through it is, frankly, a very narrow slice. The idea with the Yukon-Charlie was to protect the entire watershed, and the Park Service has plenty of tools at its availability to regulate federal land. The Park Service is not bereft of authority over navigable waters. It can work with the state on cooperative agreements, and the federal government is still not without authority over navigable waters in Alaska per Commerce Clause, per the Navigable Servitude. So issues of dumping fuel in the water, that's still illegal under the Clean Water Act. The issue here is that the Park Service can't throw its hat into the ring over navigable waters that are within the ANILCA CSUs. And it comes down to that fundamental point of when the statute was being debated, and look what happened with ANILCA, when it's resolving land claims that started with the Statehood Act, continued with the Native Plains Settlement Act, and culminated in ANILCA. And this is something that not just the Supreme Court in this case recognized, the Supreme Court in Amoco v. Gamble also recognized that ANILCA was resolving these long-running land use claims, and the Supreme Court in Gamble specifically recognized that the key floor debates were debating what land goes into conservation system units for preservation, what land is left open for economic development. That was the central tension of ANILCA. Counsel, why don't the Katie John cases control the outcome in this case? Well, the Katie John cases took the definition of public lands and issued a very narrow expansion of that term. And it said, for purposes of Title VIII within ANILCA, public lands can include navigable waters where the federal government has reserved water rights. It's here, the Park Service is asking this court to take a dramatic expansion of Katie John and say, well, because of that ruling, now all navigable waters within these CSUs are public lands, such that they are actual part of the national park system and subject to all national park regulations. And that goes much further than Section 102 and 103 of ANILCA go, which is specifically trying to exclude non-federal land from these parks and exclude non-federal land from these regulations. The Katie John decisions were very explicit. They were expanding, or this court was expanding the definition of public lands solely for the purpose of giving effect to congressional intent in Title VIII. Counsel, excuse me for interrupting you, this is Limited John. Those cases, to me, seem to make clear that Congress' intent to reserve waters is inferred if those waters are necessary to accomplish the purposes for which the land was reserved. And Congress stated that the Yukon-Charlie Rivers National Reserve was created to maintain the environmental integrity of the rivers within the park and to protect habitat, fish, wildlife, including moose. How is the regulatory authority over the Nation River not necessary to accomplish the purposes of the National Preserve? Reserve water rights are not a springboard for regulatory authority. Reserve water rights exist to either have use of water or prevent others from using water. An example in Alaska would be, there's, Anilka talks about the interest in preserving the water flow through the preserve. What that would give the Park Service, let's say somehow a dam is permitted on the Yukon River. Somehow the Corps of Engineers, the EPA, and all the other federal agencies think this would be a good idea. What the reserve water rights gets the Park Service in this instance is one thing. The idea to issue an enforcement action saying, please allow enough water through this dam to flow through the preserve to protect fish and wildlife. What those reserve water rights do not then do is give the Park Service actual regulatory authority to regulate the waters and say what type of boats can be in the waters, what you have to wear when you're on the boats in the waters. That's not what reserve water rights do. Capert, the United States Supreme Court decision about that little pool in Nevada with the pupfish, all the reserve water rights gained the Park Service in that case was the right to say to the neighboring ranch, please don't pump your groundwater to the point where you're lowering the pool where the pupfish can't breed. It did not give the Park Service regulatory authority over those private groundwaters to tell the ranchers what type of fertilizer they could use to worry about water quality or anything like that. It's an issue of use of water, not authority to regulate water. I think you do raise a good point that reserve water rights seems to not be a perfect fit for this sort of situation. But as Judge Nelson pointed out, we're not exactly writing on a clean slate because we have KD John on the books. And it talked about navigable waters, at least some navigable waters within CSUs being falling within the definition of public lands. Now, your argument is that that's limited to subsistence. But when you get to KD John 3, the designation that was deemed acceptable by the court is much broader than just solely for substance use. So how do you address that? You still go back. The regulations that were being upheld in KD John 3 were ultimately looking at which waters does the United States have reserve water rights. And there's a point even there. Some of those waters were private waters. And to expand KD John the way the Park Service is asking you to do here, which is take it outside of the universe of Title VIII, import it into the rest of the statute, you're making these private waters part of the parks, subject to Park Service regulation, and yet the federal government has done nothing to acquire them. I think this would be a surprise to the owners of the private waters. KD John exists within Title VIII, which by itself is its own universe within ANILCA. It is the only title in the entire statute that has its own preamble that goes through a great lengthy importance of subsistence, and it is the only provision in the entire statute that specifically invokes Congress's commerce power. So there is plenty of authority. The Utility Area Regulatory Group, the recent Supreme Court decision, there is authority for saying if you're looking at a specific definition, you can take it in context to a specific section of the act. And even the Supreme Court in Gamble in footnote 15, which the Supreme Court, again, it's other decision looking at ANILCA, said we declined to look at the term public lands outside the specific context of the statute. And so the term public lands in Title VIII as interpreted by this court and KD John is simply a different matter than expanding that outside of Title VIII and telling the Park Service congratulations, all these state waters, all of these non-federal land that were supposed to be excluded from the CSUs, all this non-federal land where the idea behind ANILCA was to preserve the status quo for all of this land. The Park Service didn't have regulatory authority over any of these state rivers or any of these state private or native lands before ANILCA. They're not supposed to have any regulatory authority pursuant to the Park Service regulatory authority after the passage of ANILCA. Expanding KD John outside of Title VIII violates all of that and the rest of the statute. Could you tell me, how does 103c limit its scope to regulations of general applicability? And if it does, why doesn't the Park Service regulation is an example of such a regulation? What 103 does in three sentences, in the first sentence it says if it's non-federal land, it's not part of the park. The second sentence says if it's non-federal land, the Park Service cannot regulate it pursuant to its general management regulations, which is what this hovercraft regulation is. It's purely issued under the Park Service, under this Organic Act, under its authority to generally regulate park lands. That's exactly the type of regulation that was not supposed to apply to these non-federal lands within these ANILCA CSUs. And the Native Claims Settlement Act is a really good example that crystallizes why 103c is there and what it is supposed to be doing. A lion's share of the lands that were granted under the Native Claims Settlement Act, these are lands that were granted to extinguish all aboriginal land claims in Alaska and were lands that were granted to the Native Corporations for economic development. Many of these over 15 million acres of these lands were suddenly surrounded by these new ANILCA CSUs after the statute was passed. And this is a real concern during the passage of the statute because, again, ANILCA drew boundaries around ecosystems without really paying attention to what was actually federal land. All of these Native Claims Settlement Act lands were enveloped by these ANILCA parks, and the idea was to preserve these native islands within the parks for economic development and to protect them from Park Service regulation that would render these lands absolutely worthless. But I'm not sure that really answers the question. The Alaska Statehood Act and the Submerged Land Act don't really address specifically the government's longstanding authority to regulate navigable waters. And so that's the question that still remains. I take it that your position is that with the enactment of ANILCA, all rivers, navigable waters within CSUs cannot be regulated by NPS, even if that regulation is necessary to protect all of the undeveloped federal land that surrounds or is close to these rivers. Is that your position? It's the position with the rivers and with the lands, that they're insulated from Park Service regulation. And, again, it's important the Park Service is not the government. The government, still under the Submerged Lands Act, retains authority under the Dominant Navigable Servitude. They retain authority under the Commerce Clause to regulate these waters. 103C takes that into account by referencing generally applicable regulations like Clean Water Act, Army Corps of Engineers, that type of thing. The question is, in ANILCA, did Congress delegate to the Park Service any authority to regulate navigable waters, keeping in mind that before ANILCA, the Park Service had no authority over these waters. And the idea was, after ANILCA, they still would not have authority over these waters. Well, who owns the water? The state doesn't have title to the navigable waters, does it? You could get into a long debate about that. The state has title to the submerged lands. The Supreme Court in U.S. of California has characterized that as actually being title to the waters. PPL Montana gives a more specific description. It basically says states hold the absolute right to all their navigable waters and soils under them, subject only to the rights, surrenders, and powers granted by the Constitution to the federal government. That's basically saying the states have complete control over the waters and everything in them, with exceptions, and those that are navigable serve a 200-minute Commerce Clause authority. But again, turning it around, the federal government, for all their arguments that the state can't have title to the water, all those arguments it was established, the federal government certainly doesn't have title to the waters. And then that brings back to the K-2 John as their only hook, to say we have an interest therein, we have reserve water rights. That suddenly renders all of these navigable waters public lands, such that they're not part of the parks and subject to all National Park Service regulation, which goes well beyond what Section 103C was trying to do. I know you're eating in your rebuttal time. Let me see if there are any questions. Do you want to save the rest of the time? Yes, please, Your Honor. Thank you. Good morning, and may it please the Court. I'm Ruth Botstein, Assistant Attorney General for the State of Alaska, on behalf of Alaska. The United States Supreme Court's opinion holds that ANILCA is the statute that addresses the scope of the Park Service's authority over lands within the boundaries of conservation system units in Alaska. It is ANILCA that must be this Court's starting point, not the Park Service's generalized authority in other parks in other states. And the Supreme Court also recognized that Congress intended to provide unique management rules for Alaska, in recognition of the state's uniqueness. Congress had good reason to make these unique rules in recognition of the way that ordinary Alaskans rely on our navigable waters and our state lands for fundamental transportation and living in rural Alaska setting. Well, Counsel, could you explain to me how would national park regulations over a small, defined section of the Nation River abrogate Alaska's sovereign interests over its resources? Well, Your Honor, looking, for example, at the hovercraft regulation issue in this case, Alaska law permits different types of transportation on its rivers than the Park Service permits in other parks. And the reason for that is because of the way that rural Alaskans live. There are many small villages that have no roads, that are hundreds of miles away from roads and are isolated. And the main transportation corridors, the only transportation corridors, are Alaskan rivers. So for the federal government to come in and say, you can't travel on this river in the way that you're used to, in the way that allows you to travel to a bigger village, to a city, to get medical care, to get food, to have supplies and heating oil for the winter obtained and brought to your homestead, that interferes with Alaskans' ability. Are you suggesting that everybody uses a hovercraft? Certainly not, Your Honor. There are a variety of ways that Alaskans travel. There's nothing in the record that suggests that, though, that everybody uses a hovercraft. This case is about hovercraft. It's not about whether you can get your supplies. Isn't that the case? Well, it's about hovercraft, but on a broader level, it is about who has authority to make decisions about how these rivers are to be used. And what Congress did was balance the conservation interests of the National Park Service with the need for Alaska to ensure the economic and social needs of the state and its people. You make your argument. Go ahead. I just didn't want you to miss the point. The point isn't whether you can get your supplies, the things you need. Everybody knows. In fact, airplanes move in Alaska. It's just almost private planes. This case is about a hovercraft, isn't it? It is, Your Honor. And, I mean, looking at Mr. Sturgeon, you know, he was traveling on his hovercraft to access hunting grounds to provide food for his family. And the hovercraft allowed him to- Under your argument, Counsel, what do we do with the government's clear statutory authority to regulate boating and other activities within systems units, including waters that fall within the jurisdiction of the United States? What do you make of that language? I would say two things about that language, Your Honor. The first is that under 103C, these are not rivers that are within the system units. These are rivers that are not part of the system units. They are merely within the boundaries. And, you know, this court has held, for example, in Sidi Van Goune versus Marsh, as the Supreme Court did, that Congress didn't intend to bring everything within the geographical circle around an ecosystem into the unit. So that's the first thing. But even if we accept that that's a reasonable or plausible interpretation, why doesn't Chevron deference apply to the government's contrary interpretation? Because the clear statement rule, Your Honor, trumps Chevron deference. The control over the navigable waters is an absolute part of Alaskan sovereignty. There are numerous recent Supreme Court cases, Solid Waste Agency, Rapanos, Tarrant. These are cases that hold that state control over navigable waters is an essential attribute of sovereignty and that Congress must speak clearly in order to abrogate that. And Congress hasn't done that. Certainly the boating regulations that precede ANILCA haven't done that. The Supreme Court has told us ANILCA is where we must look. And ANILCA says in Section 103C that there is a hard boundary and that Alaska retains jurisdiction over parts that are not part of the park. The problem I have with that, there's no hard boundary. Does it matter that the segment of the nation river at issue runs through and ends in National Park lands? That's true, Your Honor. And Congress was aware that it was creating these islands of land and of rivers that would be within the boundaries of the unit. And that's why it was so careful in 103C to make clear that unless the government can otherwise acquire those, it may not regulate them as though they were part of the park. This was part of the central promise and balance that Congress gave to those who owned lands and waters inside these units, that the compact that even after ANILCA was passed, they would not lose control over their lands and waters that they had before merely because they were part of an ecosystem, some of which became a national park.  And take away from the state of Alaska, from native corporation land owners, that which Congress wanted to preserve them and change the balance. And this court's cases, these Supreme Court's cases, make clear that Congress must speak clearly in order to do that. And ANILCA doesn't do that. Does that argument assume that control over navigable waters were conveyed to the state in the first place? So that if we reject that premise, that the argument would then fall apart or no longer apply? No, Your Honor. I think the court looks to the Submerged Lands Act, which applies to Alaska through the Alaska Statehood Act. And under that, Alaska was given control over those. I mean, even if – I don't think there's a serious dispute about whether that constitutes a conveyance. I mean, the cases use transfer language that's very similar to conveyance language. Even if the court is worried about that technical question, what ANILCA does is focuses on title. I mean, the definitions of ANILCA define, look to whether the federal government has a title interest in lands or waters. And after the Submerged Lands Act, the federal government does not have that in these waters. But that's where you run into the Katie John cases and the fact that we're sitting as a three-judge panel. That's right, Your Honor. And certainly with respect to subsistence, Katie John is settled law in the circuit. The state's not trying to disturb the subsistence fishing infrastructure that's in place. But what we do seek is to have the court not expand to that beyond the context in which it arose. When you look at the Katie John cases, what's clear is that every judge who looked at it struggled and how to effectuate Congress's clear intent with public lands law and how to integrate those. The touchstone for this court, for any court looking at a statute, is Congress's intent. And this is a situation where there is clear congressional intent to have a subsistence preference. And the courts felt they were in a place where the only way to do that was to give the National Park Service some jurisdiction over these waters. But there is no corresponding congressional intent to have the waters become public lands for all other regulatory purposes. And this is a situation... But as I indicated to counsel, though, by the time we got to KD3, the designation went beyond subsistence issues. And so that really makes me wonder whether our hands are tied in terms of that ultimate holding. I don't think your hands are tied, Your Honor. And I would point to Justice Scalia's language in the Utility Air Regulation Group. The presumption of consistent usage readily yields to context. And a statutory term, even one defined in the statute, may take on distinct characters from association with distinct statutory objects calling for different implementation strategies. That is exactly what we have here, Your Honor. Title VIII is a unique part of ANILCA that has its own preamble, its own purposes, and its own implementation strategies about which Congress was very specific. The rest of ANILCA doesn't have that. And to use KD1 as a springboard to give the Park Service jurisdiction over all of Alaska's sovereign waters is absolutely not what Congress intended. And this Court must first try to effectuate Congress's intent. Do you want to save the balance for Mr. McDonough's rebuttal? I do, Your Honor. Thank you. All right. Let's hear from the government. May it please the Court, I'm Elizabeth Ann Peterson for the Federal— Would you speak right into the microphone, Peter, or microphones? Is that better? A little. I'm Elizabeth Ann Peterson for the Federal Affilies. Is that better? Better when you spoke up, yes. Okay. I'll do my best. As this Court is aware, the issue here is whether a provision of ANILCA that was added after the entire statute had been passed by both houses as a technical correction took away the Park Service's authority to regulate in navigable waters. That authority was granted by Congress to the Park Service for regulation of navigable waters located within National Park System units throughout the United States. There's no question here whether when ANILCA created additional National Park System units, Congress gave the Park Service the authority to regulate the navigable waters located within them because the law is that when lands are reserved as National Park Service units, the Park Service has authority— I'm happy to ask those questions. This time is limited. How does your 103C argument differ from the one rejected by the United States Supreme Court? Well, the United States Supreme Court determined that Section 103C applies— is not limited to Alaska-specific regulations, but it left three grounds for—alternative grounds for affirming the District Court's dismissal of the complaint in this case because Section 103C also requires that the— also applies where the lands are conveyed to the state or to others and does not limit the application of regulations to public lands and does not limit the application of lands— of regulations that are not applicable solely to public lands. So regulations that are applicable both to federal and non-federal lands are not affected. For those three reasons, for any one of those three reasons, this court can affirm the District Court. I want to focus on the navigable waters issue in part because I think many of the statements that have been made here today are incorrect. The United States retains a dominant servitude over the navigable waters when lands—when submerged lands become state lands on statehood. The Alaska Statehood Act provides that Alaska should have the same rights under that Submerged Lands Act as the other states. In other states, the National Park Services Authority, granted by Congress under the Commerce Clause Authority, applies to navigable waters located within National Park Service units. There's nothing in ANILCA that says Alaska is different in this regard. Well, let me ask this question then. The Reserve Water Rights Doctrine reserves only that amount of water necessary to fulfill the purpose of the reservations. No more. That's Cicada Zone 3. Yet the case before us does not involve any amount of water necessary to fulfill the park's purpose. Why does the Reserve Water Rights Doctrine apply to this case? This case is not about reserve water rights. This case is about whether the United States owns interests in navigable waters. And under Village of— You're not claiming title. Title to an interest, that is, to federal water rights in navigable waters. In Village of Gamble— So you are accepting the conclusion in the Katie John case that the government owns title to an interest in navigable waters, but you're rejecting the Reserve Water Rights Analysis in Katie John 1? No, not at all, Your Honor. The analysis is— Because I think that's what Judge Nelson was asking about, that there are limits to the Reserve Water Rights Doctrine that doesn't seem to fit this case. Now, it may be that the panel decides that whatever flaws, if any, the Katie John line of cases have, that we're bound by its analysis of these waters as public land for purposes of ANILCA, but there are limitations to the Water Rights— Reserve Water Rights Doctrine, are there not? There are limits in that only water is necessary to the purposes for which lands are reserved, are reserved along with those lands. That's an interest that the United States retains along with the lands when it reserves lands as it did in ANILCA. In the Katie John 1 decision, the court held that it was clear on its face that ANILCA intended some navigable waters to be treated as public lands, and it left to the federal agencies to determine which waters those were, and the federal agency's theory about determining which waters the federal government retained property interests in that would be sufficient to call them title were those in which federal reserve water rights would exist for purposes of the reserved lands. So, that is the reason why the navigable waters, including the Nation River here, have been designated as public lands in Park Service regulations. Those regulations have been ratified by Congress as an appropriate interpretation of the definition of public lands. And I might also add that in Village of Gamble, the Supreme Court held that the definition of public lands that defines the scope of Title 8, the subsistence provisions, applies to the rest of the statute as well. So, the argument that this is a limited kind of interpretation, an interpretation that applies only for one part of the statute, has already been rejected by the Supreme Court. What are the limits to the federal government's ability to regulate under your theory and arguments for the case? I think the best reason for the government's ability to regulate the waters is that the United States has statutory authority to regulate navigable waters in national Park Service units. The sturgeon and state theory that the parts of these rivers that are navigable aren't within the units is a linguistic issue. They are located within the units. They are not part of the units and they need not be part of the units to be subject to the Park Service's authority to regulate them where it is responsible for administering the surrounding lands. Congress specifically granted that authority to the Park Service in 1976 and when it enacted ANILCA in 1980, not one single mention was made of any change in the nature of the Park Service's regulatory authority on navigable waters within Park Service units. There's no dispute about that. The word barely appears in the statute. Is your answer then that the limits of the government's ability to regulate navigable waters comes from the statutory authority to regulate waters within systems unit and ANILCA in no way changes that? Exactly, Your Honor. I don't think 103C makes one bit of difference to the United States' authority to regulate navigable waters in National Park System units. And if it did, then this court's Katie John precedence forecloses the state's theory that no navigable waters can be regulated by the United States or by the Park Service, excuse me, because on its face this court has held ANILCA provides that some navigable waters are public lands subject to Park Service regulation and other federal regulations. But the analysis is not without dispute or controversy even among the members of this court. Well, the rationale was somewhat splintered, but even the dissenting judges have held, one, that some water, in Katie John 1, the dissenting judge held that navigable waters, some navigable waters are public lands on the face of the statute. She disagreed with the reserve water rights theory of which waters. The en banc court dissenting judges also said there's no dispute that the Park Service can regulate navigable waters. We just don't agree with this theory. So as far as this case is concerned, those differences of opinion are virtually irrelevant. The Park Service's authority to regulate navigable waters here has nothing to do with whether they're public lands or not. It has to do with the fact that they are located within federal parks and national park service units. The only question here is whether a regulation that applies across the national park system applies to the navigable waters that are located within those units. Are you saying that the regulations apply both to public and non-public lands? Yes, Your Honor, because navigable waters, well, for two reasons. Because navigable waters are not lands. They're not public lands and they're not owned the way lands are owned. So navigable waters are subject to the United States regulatory authority under the Commerce Clause because just as private lands are and just as the general applicability regulations that the Sturgeon appellants are willing to agree do apply, the Park Service regulations implement an authority that applies regardless of the ownership of the lands. And regardless of reserve rights. Correct, Your Honor. Those regulations, any regulation that applies on public lands applies on those navigable waters that have been identified as public lands and that includes the National River also. So for that additional reason, the district court's decision in this case can be affirmed. Each of the three questions that the Supreme Court left open leads to the conclusion that the district court correctly dismissed the complaint here that navigable waters within park units located in, perhaps to be more clear, Park Service units in Alaska are subject to federal regulation under 54 U.S.C. 10751 or however the recodified statute calls it. They are also public lands under this court's precedent. And in addition, even if they were not, the authority that the Park Service has applies regardless of ownership. The broad organic act authority applies where necessary to protect public lands or park lands and resources. So there are three separate ways in which this court could affirm the district court. I think the most direct and the simplest is to say it has statutory authority to do it under the statute that amended the National Parks Improvement Act of 1970 in 1976 explicitly authorizing regulation of boating and activities affecting waters. I'm just pursuing this one step further. Are your arguments concerning public lands and 103C mutually exclusive? No, Your Honor. Each of these theories reinforces the others. The Park Services Authority has not been withdrawn by ANILCA. It does exist where lands are reserved and designated as National Park Service units. Within those units that are subject to ANILCA, this court has held that some navigable waters, including the water at issue here, are public lands. So for that additional reason, the Park Service may apply its regulations in the Nation River. And finally, the National Park Service has authority to regulate off federal lands where it needs to. And so any one of those three reasons would support the district court's dismissal of the complaint in this case. You indicated that the simplest way to get to win for the federal government is reliance on 10751B. I think it is that gives the federal government the authority to regulate activities on navigable waters within the systems unit. But if we were to go that route, do we have to then still reconcile that with ANILCA's language that inholding shall not be subject to regulations applicable solely to federal land within CSUs? Well, it's easily... Ms. Virgin came up with a different argument for that. That's seemingly plausible, the way you read what solely really means. So the question is whether the regulation here is applicable solely to public lands? Because the regulation here is applicable within the boundaries of Park Service units. So where those lands are not federally owned, this regulation applies anyway. That's noted in our supplemental brief, but the regulatory authority applied on navigable waters is not applicable because the United States owns it. It's applicable because the United States regulates navigable waters. And under its retained Congress-clause authority that was delegated directly to it by Congress. So those two points are easily reconciled with one another. I just want to make sure that I'm addressing the issues that were raised here today. With respect to preserving the status quo and the clear statement rule, the status quo when ANILCA was enacted is that the federal government has authority to regulate navigable waters and has delegated authority to regulate navigable waters within Park Service units to the Park Service. So where it designated lands and rivers, for that matter, there are units designated in ANILCA that are themselves rivers, wild and scenic river segments. The Park Service has authority to regulate them. I think maybe one way to think about that is to recognize that all throughout the United States, in the Grand Canyon, the Park Service regulates the use of the Colorado River, not because Arizona doesn't own the bed, but because the United States administers the land surrounding it for their protection and for the protection of navigable waters running through them. And I don't think that Mr. Sturgeon disputes that with regard to other national parks and monuments. As I understand it, their argument is that Alaska is different. But ANILCA doesn't have anything in it that says that. There's not one single provision that says that the management or administration of navigable waters in Alaska is different from that management elsewhere. And do you disagree that control over navigable waters implicate Alaska's sovereignty rights? Alaska has sovereign authority to control navigable waters. It's exercised concurrently with the United States throughout the state. And where the Park Service has been granted explicit authority to promulgate and enforce regulations in waters, those regulations are paramount to conflicting state regulations. That's the rule throughout the United States. That's how the Submerged Lands Act works. So given that you indicated that the state of Alaska has concurrent authority over navigable waters, does that require a clear statement from Congress? And if so, where do you see the clear statement within ANILCA itself? It would only require a clear statement if there were a change. And Mr. Sturgeon is arguing that there was a change, that Alaska is different, that Alaska does not... In Alaska, the Park Service does not regulate navigable waters. That's not in the statute. And there's no need for a clear statement that the National Park Service does regulate waters within units because that's the law. There's a statute to that effect on the books. There are a number of provisions in the statute that address the differences in Alaska. For example, in preserves, the statute requires that subsistence hunting and fishing and various activities, including trapping, are allowed. That's discretionary in the Secretary and the other parks in the United States. The statute also requires the Secretary to allow the use of motorboats, airplanes, snow machines for access to remote villages and home sites. So the statute does take into account the differences in Alaska, and it doesn't say one word about navigable waters being subject to a different level or a different type of regulation that's exclusively in the state. Not one word. So it seems that if there's a clear statement issue here, a problem here, it's with the state's argument. The state is suggesting that in a technical correction, Congress eliminated a critical aspect of the Park Service's regulatory authority within the units that it administers, and there's no evidence in the statute and no evidence in the legislative history to support that theory. So in our view, the district court's dismissal of the complaint in this case was correct for a number of reasons, and for any one of the reasons on which this case was remanded from the Supreme Court, this court can affirm it. If the court has no further questions, thank you very much. I don't, Judge Nelson? Judge Ferris? No. Thank you very much. Well, let's put two minutes on the clock. We'll round it off for you. Thank you very much, Your Honor. Probably the most telling exchange, Judge Nguyen, when you asked the government on what limits their theory puts on the Park Service authority, and their answer was very clear. None. Well, 107.51. Yeah, or not only that. That's the only limit that the government concedes. Well, and the government doesn't even concede that that's any limitation on their authority over navigable waters. The Park Service's theory here, to be clear, is that within these Inuka Parks, if it's non-federal water, absolutely. They can regulate it fully at their discretion. And you heard the government say for non-federal land of those inholdings, any time the Park Service feels under the Organic Act it needs to regulate those lands, it can. There's zero limiting principle to the National Park Service's argument here about its authority to regulate non-federal land within these Inuka Parks, and that does absolute violence to the language of 103C, which went out of its way to make clear these non-federal lands aren't part of the park, and these non-federal lands and waters, keep in mind, Inuka says the term land means lands and waters and interests therein. 103C itself is already talking about waters, and it's saying these lands shouldn't be subject to Park Service regulation as though they're part of the park. Now the Park Service, I'm sure, wishes that language weren't there. They wish they had the extent of the authority they had in other parks. That's not what Inuka did. And they keep trying to say Section 103C, that's a technical correction. That's simply a misrepresentation of the legislative history. The language that was 103C was introduced early on by Representative Seiberling, that was 810C of the House version. It was in the House version of the bill all along. There are debates on the Senate floor about authority over inholdings under Native Plains Settlement Act. Both Senator Stevens and Senator Udall had long discussions about that. All that happened was at the end, when both House and Senate versions passed, the House version fell out because they used the Senate version, and so they put 103C back in the statute as part of the reconciliation process. And the legislative history they're referring to as a technical correction also states that there were more substantive provisions in there. And I see I'm out of time. Thank you very much. All right. Thank you very much to both sides for your very helpful arguments in this case. The matter is submitted for a decision by this Court.
judges: Farris, D.W. Nelson, Nguyen